IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| WEBB MTN, LLC, ) | | |
| ) | | |
| Debtor. ) | | |
| _____ ) | | |
| ) | | |
| WEBB MTN, LLC, ) | | |
| ) | | |
| Appellant, ) | | |
| ) | | |
| v. ) | No. 3:07-CV-437 | |
| ) | | |
| KENNETH WHALEY, ) | | |
| GREENBRIER DEVELOPERS, LLC, ) | | |
| M&A ENTERPRISES, INC., ) | | |
| EXECUTIVE REALTY PARTNERSHIP, L.P., ) | | |
| and GERALD FRANKLIN, TRUSTEE, ) | | |
| ) | | |
| Appellees. ) | | |

## **MEMORANDUM OPINION**

Debtor Webb Mtn, LLC ("Debtor") appeals the bankruptcy court's dismissal of its Chapter 11 bankruptcy as a bad faith filing under 11 U.S.C. § 1112(b). For the reasons that follow, the judgment of the bankruptcy court will be reversed.

I.

*Background*

The facts underlying this case are well-summarized in the bankruptcy court's memorandum opinion and are not contested by the parties. In material part,

On October 5, 2005, Jack Collier, the Debtor's sole member, entered into a First Agreement for Purchase and Sale (Contract) with the [Appellees] for the purchase of approximately 1,865.60 acres of real property known as Webb Mountain . . . [in] Sevier County, Tennessee (Webb Mountain Property), for a purchase price of $27,975,000.00 . . . . Collier assigned the Contract to the Debtor and, as evidenced by five General Warranty Deeds recorded with the Register of Deeds for Sevier County, Tennessee, the Debtor purchased the Webb Mountain Property from the [Appellees] on March 24, 2006. . . .

The Debtor financed $26,225,000.00 of the purchase price as evidenced by its execution of the following promissory notes (collectively, Notes) and Deeds of Trust: (1) Promissory Note to Kenneth Whaley, Greenbrier Developers, LLC, M & A Enterprises, Inc., and Gerald Franklin, Trustee, in the principal amount of $4,790,000.00, secured by a Deed of Trust on 71.21 acres; (2) Promissory Note to Executive Realty Partnership, L.P., in the principal amount of $990,000.00, secured by a Deed of Trust on 21 acres; (3) Promissory Note to Greenbrier Developers, LLC, in the principal amount of $10,465,000.00, secured by a Deed of Trust on 195.39 acres; (4) Promissory Note to Gerald Franklin, Trustee, in the principal amount of $8,980,000.00, secured by a Deed of Trust on approximately 1,440 acres; and (5) Promissory Note to M & A Enterprises, Inc., in the principal amount of $1,000,000.00, secured by a Deed of Trust on 131.56 acres. . . . Each Note called for a partial payment of principal and interest within ninety (90) days, with the unpaid principal balance and accrued interest due on January 3, 2007.

As required under the terms of the Notes, the Debtor made . . . partial payments, totaling $3,250,000.00, on June 23, 2006 . . . . The Debtor paid the Note to M & A Enterprises, Inc., in full on December 8, 2006, and the Deed of Trust encumbering the 131.56 acre tract was released.

The four remaining Notes were not paid as required on January 3, 2007, and the [Appellees] subsequently commenced foreclosure proceedings against the remainder of the Webb Mountain Property. In addition, on March 9, 2007, two Notices of Lien Claim were recorded against the Webb Mountain Property for services performed for but not paid by the Debtor. The first was recorded by Whaley & Sons, Inc. . . . to secure a $421,015.50 claim against the Debtor. . . . The second was recorded by Southern Design Group, Inc. . . . to secure a $450,103.62 claim against the Debtor. . . .

In an effort to work out the default and prevent the Webb Mountain Property from being foreclosed, the parties entered into a Conditional Extension of Borrowers' [sic] Obligation Under Promissory Notes (Conditional Extension Agreement) on March 27, 2007 . . . . Under the terms of the Conditional Extension Agreement, the foreclosure sales were adjourned to a date after June 25, 2007, upon execution by the Debtor of Quit Claim Deeds transferring the Webb Mountain Property back to the [Appellees] to be held in escrow until June 26, 2007, at which time, if the Notes were not fully paid, the Escrow Agent was to "immediately" record the Quit Claim Deeds thereby transferring the Debtor's interest in the four remaining tracts to the [Appellees]. . . .

On March 27, 2007, the Debtor also executed an Agreement (Release Agreement) with Whaley & Sons, Inc., and Southern Design Group, Inc., under the terms of which those two entities agreed to each "immediately" execute and record a Full Release of Lien and Notice of Nonpayment, fully releasing their liens encumbering the Webb Mountain Property. . . . As consideration, the Debtor acknowledged its indebtedness to Whaley & Sons, Inc., and Southern Design Group, Inc., in the collective amount of $450,000.00, and agreed to pay this amount by July 5, 2007. In the event payment was not made as agreed upon, both Whaley & Sons, Inc., and Southern Design Group retained the right to re-file their liens on or after July 6, 2007.

[Doc. 1, ex. 27, p. 2-5].

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 25, 2007. [Doc. 1, ex. 1]. On August 10, 2007, the Appellees filed a motion to dismiss. The bankruptcy court conducted an evidentiary hearing on September 11, 2007. The following week, the bankruptcy court issued a memorandum opinion and order dismissing the Chapter 11 bankruptcy as a bad faith filing. One day later, the Appellees recorded their four quit claim deeds.

## II.

### *Standard of Review*

A bankruptcy court's finding of bad faith is a factual determination reviewed for clear error. *See Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 132 (6th Cir. 1995). "[A]n appellate court may reverse a lower forum's factual finding for clear error when, even though the record contains some evidence in support of the finding, consideration of the overall evidence leaves the reviewing court with the definite and firm conviction that a mistake has been committed." *Indmar Prods. Co. v. Comm'r of Internal Revenue*, 444 F.3d 771, 778 (6th Cir. 2006) (citations and quotations omitted).

## III.

### *Analysis*

As amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. § 1112 provides in material part that

> on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes *cause*.

11 U.S.C. § 1112(b)(1) (emphasis added). "[T]he term 'cause' *includes*" sixteen listed examples, none of which are "bad faith" - the basis relied upon by the bankruptcy court. 11 U.S.C. § 1112(b)(4) (emphasis added). However, due to the Bankruptcy Code's use of the

4

introductory word "includes," the sixteen listed examples are nonexclusive, *see* 11 U.S.C. § 102(3), and bad faith filing is considered to be an additional "cause" for dismissal under § 1112. *See, e.g., Trident*, 52 F.3d at 131-32.

Both the Supreme Court and the Sixth Circuit Court of Appeals have declined to precisely define good and bad faith in the bankruptcy context, *see Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1111-12 n.11 (2007); *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988), but certain parameters of the concept are nonetheless clear. The "amorphous notion" of bad faith is "largely defined by factual inquiry." *Okoreeh-Baah*, 836 F.2d at 1033. The Supreme Court has "emphasized" that, to support a finding of bad faith, the debtor's conduct must have been "atypical," and the case must be "extraordinary." *Marrama*, 127 S. Ct. at 1111-12, n.11. There is no "mechanical good faith equation." *Okoreeh-Baah*, 836 F.2d at 1033. Instead, an "infinite variety of factors . . . must be weighed carefully" and flexibly. *Id.*

The Sixth Circuit "embraces the 'totality of the circumstances' approach, not a mechanical, bright-line rule." *Id.* at 1032. "[T]he totality of the circumstances test means exactly what it says: It exacts an examination of all the facts in order to determine the bona fides of the debtor." *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 860 (6th Cir. 1988) (citation and quotations omitted). To assist courts in conducting their careful, flexible analysis, the Sixth Circuit has articulated eight factors that may be "meaningful in evaluating" bad faith.

5

1. The debtor has only one asset.

2. The pre-petition conduct of the debtor has been improper.

3. There are only a few unsecured creditors.

4. The debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court.

5. The debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford.

6. The filing of the petition effectively allows the debtor to evade court orders.

7. The debtor has no ongoing business or employees.

8. The lack of possibility of reorganization.

*Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 (6th Cir. 1994) (citation omitted).

The bankruptcy court correctly noted *the presence of* several of these factors. This is essentially a single asset bankruptcy, there are few unsecured creditors, the real estate had been set for foreclosure, and the Debtor has no employees and no defined ongoing business. The bankruptcy court did not, however, take the necessary second step of analyzing these factors to determine whether their presence was indeed relevant to the actual bad faith of the instant debtor. Again, the *Laguna* factors cannot simply be mechanically tallied.

*Laguna* and *Trident* illustrate when and how the above-cited factors can be indicative of bad faith. In those cases, the debtors were formed on the eve of, and for the

6

apparent sole purpose of, filing bankruptcy to temporarily protect a single asset. *Trident*, 52 F.3d at 132; *Laguna*, 30 F.3d at 738. The *Trident* court noted the presence of the "new debtor syndrome," where "a one-asset debtor [had been] created on the eve of foreclosure to isolate [a] property" and frustrate creditors. *Trident*, 52 F.3d at 132. In such a circumstance, factors such as having only one primary asset, few unsecured creditors, a pending foreclosure, and no employees or ongoing business could certainly be probative of bad faith.

Conversely, the instant case is not suggestive of "new debtor syndrome." The Debtor was not formed on the eve of bankruptcy. Mere filing by a business or individual in order to avoid foreclosure is, in and of itself, neither atypical nor extraordinary. Further, the Bankruptcy Code permits single asset real estate bankruptcies, *see, e.g.*, 11 U.S.C. § 362(d)(3), so the present single asset filing is not atypical or extraordinary on its face. In sum, while the instant debtor may, on the surface, share certain characteristics with the *Trident* and *Laguna* entities, careful inquiry does connect the mere presence of those characteristics to actual bad faith.

Regarding the second *Laguna* factor, improper pre-petition conduct, the bankruptcy court stated,

> The Movants do not contend, nor does the court find, that the Debtor, through Mr. Collier, engaged in any fraudulent behavior pre-petition. Nevertheless, the question is not whether the Debtor acted fraudulently but whether it engaged in improper actions. Based upon the record before it, the court finds that the Debtor did act improperly with respect to the Movants[.]

7

[Doc. 1, ex. 28, p. 8]. In support of its finding of improper pre-petition conduct, the bankruptcy court cited: the negotiated agreements for additional time with the Appellees, Whaley & Sons, Inc., and Southern Design Group, Inc.; the unpaid debts to those entities; the good faith of the Appellees; and the timing of the Debtor's bankruptcy, which was filed one day before Appellees would have been entitled to file their quitclaim deeds and approximately ten days before the other entities would have been entitled to refile their liens.

It is noteworthy that the bankruptcy court did not find, and the Appellees still do not allege, that the Debtor has in any way acted fraudulently. Whatever the difference between "fraudulent" and "improper" may be in the present context, the conduct at issue must, after meaningful evaluation, be in the nature of "atypical" and "extraordinary." It is in fact a typical, ordinary, daily happening for a creditor to find itself in a worsened position by virtue of a debtor having filed bankruptcy. *See, e.g., Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991). As the present debtor correctly points out, "It is not bad faith to seek to gain an advantage from declaring bankruptcy - why else would one declare it?" *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992). The mere act of filing bankruptcy cannot be viewed as improper conduct.

As for the final *Laguna* factor, the bankruptcy court observed that "the prospects for reorganization are slim." On the facts now before the court, that observation is certainly not unreasonable. However, *Laguna* speaks to "the *lack of possibility* of

reorganization," rather than prospects that are merely slim. "Many troubled businesses are simply not viable, and most debtors that enter chapter 11 do not succeed in confirming a chapter 11 plan." 7 King, Collier on Bankruptcy ¶ 1112.04[4][a] (15th ed. 2005). Bleak financial health cannot be considered "atypical" or "extraordinary" in the bankruptcy setting.

IV.

*Conclusion*

Based on the applicable standard of review and for the reasons stated herein, the court finds error in the dismissal of this case as a bad faith filing. The bankruptcy court's judgment must therefore be reversed.

The court notes Appellees' contention that the Debtor's appeal was mooted by the post-dismissal filings of their quitclaim deeds. However, Appellees cite no on-point authority precluding the bankruptcy court from, for example, ordering the quitclaim deeds null and void. Further, even assuming *arguendo* that Appellees are correct regarding the finality of their deeds, the Debtor still retains at least one significant asset - the 131-acre tract located atop Webb Mountain. Appellees' mootness argument is therefore without merit.

The parties' remaining arguments are rendered moot by the court's ruling this date. An order consistent with this opinion will be entered.

ENTER:

                                                          s/ Leon Jordan
                                                     United States District Judge